298 So.2d 666

**Norman Lee TRAMMELL**

v.

**STATE.**

**6 Div. 612.**

Court of Criminal Appeals of Alabama.

July 30, 1974.

Spencer T. Bachus, III, Birmingham, for appellant.

William J. Baxley, Atty. Gen., and Walter S. Turner, Chief Asst. Atty. Gen., for the State.

CATES, Presiding Judge.

Second degree murder: sentence, thirty years imprisonment.

I

■ The only eye-witness to Trammell's alleged fatal stabbing of William Causey was Pauline Bertramm. Some six months before the trial she had suffered a stroke which affected her speech. Consequently, she was allowed—over objection—to be interrogated by leading questions. Her answers were given mostly by negative or affirmative nods of the head. See Quinn v. Halbert, 55 Vt. 224.

■■ The discretion of a trial judge as to the competency of a witness is of a well nigh irrevisable nature. Thus, in Burgess v. State, 256 Ala. 5, 53 So.2d 568, (the Bug Tussle bludgeoning), a deaf mute eye-witness spoke by signs and motions to her brother. As pointed out, the defense in such case is entitled to request a written charge to the jury that the witness's disability may be considered as bearing on the weight of the testimony.

Sua sponte, the trial judge in his general charge instructed the jury in pertinent part:

"Now, ladies and gentlemen, I do want to comment about Pauline Bertramm just a moment. The only comment I wish to make is in her role as a witness. This is a unique case. In fact, it is probably a case of what we would call 'of first impression.' By that I mean that I don't believe that it has ever occurred before.

"There have been situations where a witness could not communicate directly to the jury or respond to questions directly. By that, I mean such as if a person were deaf and dumb, we would have to be an interpreter which is proper and could be done. However, that person could then communicate to the jury through a third party.

"Next, you would have a person who may have a language barrier. Here again, you could get an interpreter. But in this case, this witness has been ruled by this Court as a matter of law to be competent to testify. The Court does not determine the credibility. That is entirely up to you. That is strictly within the discretion of this jury.

"However, the Court allowed wide latitude as far as her testimony was concerned due to the fact that she could not communicate directly to you.

"I did want to explain as to that. However, as I stated—I will reiterate so that there will be no misunderstanding—her competency merely means that she is able to offer evidence to which she testified, not her credibility because, as I stated, that is entirely up to the jury. It is strictly within your discretion and I would never encroach upon that discretion."

 Defense counsel did not attempt to secure the testimony of the physicians who had examined the witness. Although at one time it appears that impeachment could not come from a medical opinion (State v. Driver, 88 W.Va. 479, 107 S.E. 189), the modern trend seems to allow such evidence even though it brings on the risk of a trial within a trial. 3A Wigmore, Evidence, §§ 934 and 935 (Chadbourn rev. 1970); Reg. v. Toohey, [1965] A.C. 595; see Redwine v. State, 258 Ala. 196, 61 So.2d 724.

Defense counsel did have the opportunity to cross examine Pauline Bertramm. We see no problem under Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923. While her answers at times were inconsistent yet redirect examination brought out a thread which supports the verdict.

## II

The indictment charged that Trammell killed Causey by stabbing him with a bayonet. Pauline Bertramm could only testify that Trammell used a knife. Webster 2d Intl.Edn. says "Knives are of many forms for different uses."

We consider that a bayonet is a form of knife. Hence, probata and allegata are consistent.

We have examined the entire record under Code 1940, T. 15, § 389 and consider that the judgment below should be

Affirmed.

All the Judges concur.