I concur in affirming, but write because the majority views the State as having an obligation under Amendments V and VI of the U.S. Constitution to prove that Coverson "knowingly and intelligently waived" his rights thereunder as a predicate to admitting his confession into evidence. That *Page 650 
is no longer the law; the State has no such evidentiary burden.
Coverson complains of the admission into evidence of the statement he made to law enforcement officers in which he admitted burglarizing the apartment.
There is no question but that the officers scrupulously gave all the Miranda warnings. Objectively, there was nothing more they could have done.
On appeal, however, Coverson maintains he lacked the intelligence to knowingly waive his Fifth and Sixth Amendment constitutional rights, because he was under the influence of drugs and alcohol.
 In the 1966 landmark decision, Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the U.S. Supreme Court mandated specific warnings to an accused — for many years now familiar to every law enforcement officer — of his right to remain silent, that anything he said could be used against him, that he had a right to the presence of an attorney, and an attorney would be appointed for him if he could not afford one. The Court added that after such warnings, "the individual may knowingly and intelligently waive these rights." (Emphasis added) The Court also stated that when an interrogation continued without the presence of an attorney, a "heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." (Emphasis added) 384 U.S. at 475, 86 S.Ct. at 1628, 16 L.Ed.2d at 724. See also, Fare v. Michael C., 442 U.S. 707, 724, 99 S.Ct. 2560, 2571, 61 L.Ed.2d 197, 212 (1979); Moran v. Burdine
[sic], 475 U.S. 412, 421, 106 S.Ct. 1135, 1140, 89 L.Ed.2d 410, 421 (1986). In Edwards v. Arizona, 451 U.S. 477, 486 n. 9, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378, 387 (1981), the Court held that whether or not the purported waiver was knowingly and intelligently given was to be found "under the totality of the circumstances."
Butler v. State, 608 So.2d 314, 321-22 (Miss. 1992).
 In a hearing challenging the competency of a confession, any careful circuit judge can rather easily determine by objective inquiry whether the specific warnings required by Miranda were given. But, suppose the accused is of limited intelligence as so frequently is the case in criminal prosecutions?[1] Miranda has been consistently interpreted by this Court, as well as other state and federal courts, to additionally require a trial court inquiry into the mental capacity of the accused, a far more difficult undertaking. Did he have the mental capacity to knowingly and intelligently
waive two very valuable rights guaranteed by the U.S. Constitution — the right not to incriminate himself, and the right to have the presence and advice of a lawyer before he said anything?
Id., at 322 (citations omitted).
Before examining the post-Miranda developments on this question of Constitutional law, it is well first to examine why and when a confession is competent under conventional rules of evidence. The first and core inquiry as to any confession is its trustworthiness as evidence. Without reliability it is useless to the factfinder's search for truth.
Because it is totally foreign to the human personality to admit guilt to something one did not do, and it is also difficult to acknowledge one's own guilt, a person's admission that he committed some criminal offense carries with it a strong element of reliability provided, but only provided, it is freely and voluntarily made. The only assurance a court can have that an admission of guilt has any credence is that it was freely and voluntarily given.
 It is also true that, aside from any constitutional guarantee, an extorted confession has always been considered worthless as evidence. This Court has always recognized that a confession resulting from threats, physical force or promise of reward was not free and voluntary, and, therefore, incompetent as *Page 651 
evidence. "The vice of induced confessions, whether under pressure of threat or promise, is seen not so much in the method as in the result. It is the improbability of its being true that vitiates it, even though the courts take frequent occasion properly to condemn forcible methods." Usrey v. State, 198 Miss. 17, 22, 20 So.2d 847, 848 (1945). See also Ammons v. State, 80 Miss. 592, 32 So. 9 (1902); Hamilton v. State, 77 Miss. 675, 27 So. 606 (1900). See generally 3 Wigmore Evidence § 822 (Chadbourne Rev. 1970).
Butler v. State, 608 So.2d 314, 323 (Miss. 1992). Seegenerally 23 C.J.S. Criminal Law § 817.
Just as obvious is that in order for a confession to have anyevidentiary value, it must have been given by a person with at least enough intelligence to be a competent witness. Ford v.State, 75 Miss. 101, 21 So. 524 (1897); Redwine v. State,258 Ala. 196, 61 So.2d 724 (1952). See also 23 C.J.S. CriminalLaw § 828.
The above requirements are well-settled rules of evidence regarding confessions, aside from any Constitutional guarantee.
Beyond this, however, are two sacred rights guaranteed by the Fifth and Sixth Amendments to the U.S. Constitution, and by Art. 3, § 26 of the Mississippi Constitution,[2] that no accused shall be compelled to be a witness against himself, and has the right to have the assistance of counsel for his defense. It can be readily seen that these Constitutional requirements are prohibitory as well as mandatory. The state has an obligation to refrain from any conduct to extort an accused to incriminate himself, and the state has an affirmative obligation to see that the accused is afforded a lawyer if he wants one.
The purpose of the Miranda holding was to assure compliance by the government with these two constitutional rights, regrettably ignored in too many cases, by requiring at a minimum certain specific warnings to the accused.
It can be readily seen that when a law enforcement officer gives an accused the specific warnings set forth in Miranda,
the state has literally complied with the Fifth and Sixth Amendments. It has told the accused he does not have to make any statement, and that any he cares to make can be used against him in court. He has been told that he has the right to a lawyer, and if he cannot afford one, he can have the services of appointed counsel. These amendments go to conduct by the government, something the government can control, and when the state has followed them it has done all it can do.
When an accused is told in clear and simple language that he does not have to make any statement, warned that anything he says can be used against him in court, and further told that he has a right to have his own lawyer, or an appointed lawyer to be present before he makes any statement, it then becomes the choice of the accused whether or not he wants to make any statement.
Miranda has been interpreted to mean, however, that if an accused, after such warning, decides to make a statement, he thereby has "waived" his Fifth and Sixth Amendment rights, and it is incumbent upon the state to show that he "knowingly and intelligently waived" his rights. See, e.g., Neal v. State,451 So.2d 743, 753 (Miss. 1984). This has required the state to prove as a Constitutional predicate something over which no law enforcement officer has any control, the mental capacity of the accused.
Following Miranda, the question of the mental capacity of an accused to waive his *Page 652 
Constitutional rights was raised in a number of cases, culminating in Neal v. State, 451 So.2d 743 (Miss. 1984). See,e.g., Merrill v. State, 482 So.2d 1147 (Miss. 1988); Stevens v.State, 458 So.2d 726 (Miss. 1984); Gator v. State,402 So.2d 316 (Miss. 1981); Lee v. State, 338 So.2d 399, 401 (Miss. 1976); Hancock v. State, 299 So.2d 188 (Miss. 1974); Harrisonv. State, 285 So.2d 889 (Miss. 1973); Dover v. State,227 So.2d 296 (Miss. 1969); Harvey v. State, 207 So.2d 108 (Miss. 1968).
In Neal we held that the circuit judge did not abuse his discretion in holding Neal had "waived" his Constitutional rights because the record supported Neal had the intelligence to do so. Neal had the distinction of being an alumnus both of Ellisville State School and the Mississippi State Hospital at Whitfield, with an I.Q. of 54. Neal v. State, 451 So.2d 743, 751-57 (Miss. 1984).
The question of the defendant's mental ability to knowingly and intelligently waive his Constitutional rights has been raised in the several cases following Neal, namely: Ricks v. State,611 So.2d 212 (Miss. 1992); Butler v. State, 608 So.2d 314 (Miss. 1992); Jenkins v. State, 607 So.2d 1171 (Miss. 1992); Bowen v.State, 607 So.2d 1159 (Miss. 1992); Abram v. State,606 So.2d 1015 (Miss. 1992); Holland v. State, 587 So.2d 848 (Miss. 1991); Kniep v. State, 525 So.2d 385 (Miss. 1988); Johnson v.State, 511 So.2d 1360 (Miss. 1987); Moore v. State,493 So.2d 1301 (Miss. 1986); Swanier v. State, 473 So.2d 180 (Miss. 1985); Jones v. State, 461 So.2d 686 (Miss. 1984); Stevens v.State, 458 So.2d 726 (Miss. 1984); Billiot v. State,454 So.2d 445 (Miss. 1984).
With one exception, Dover v. State, 227 So.2d 296 (Miss. 1966), we have held in all cases that defendants, many of whom were mentally deficient in one way or another, nevertheless had the mental capacity to "knowingly and intelligently waive" their Constitutional rights.
Trial and appellate courts' ability to discern mental capacities in uneducated and mentally retarded defendants to understand and intelligently waive Constitutional guarantees has not been restricted to Mississippi. See, Annotation, MentalSubnormality as Affecting Voluntariness or Admissibility of aConfession, 8 A.L.R.4th 16 (1981). See also Cooper v. Griffin,455 F.2d 1142 (5th Cir. 1972); Winfrey v. Wyrick, 836 F.2d 406
(8th Cir. 1987), cert. denied sub nom. Winfrey v. Armontrout,488 U.S. 833, 109 S.Ct. 91, 102 L.Ed.2d 67 (1988); People v.Henderson, 83 Ill. App.3d 854, 39 Ill.Dec. 8, 404 N.E.2d 392
(1980); Commonwealth v. Daniels, 366 Mass. 601, 321 N.E.2d 822
(1975).
The above decisions support the finding of the circuit judge in this case that Coverson did have the intelligence to waive these rights.
 More importantly, however, the U.S. Supreme Court in Colorado v. Connelly, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986), held that [once an accused has been given all warnings as required by Miranda], there is no [exceptional] Constitutional requirement that an accused [have the mental capacity to] "knowingly and intelligently" waive his or her 5th or 6th Amendment rights.
 Respondent would now have us require sweeping inquiries into the state of mind of a criminal defendant who has confessed, inquiries quite divorced from any coercion brought to bear on the defendant by the State. We think the Constitution rightly leaves this sort of inquiry to be resolved by state laws governing the admission of evidence and erects no standard of its own in this area. A statement rendered by one in the condition of respondent might be proved to be quite unreliable, but this is a matter to be governed by the evidentiary laws of the forum, see, e.g. Fed.Rule Evid. 601, and not by the Due Process Clause of the Fourteenth Amendment. "The aim of the requirement of due process is not to exclude presumptively false evidence, but to prevent fundamental unfairness in the use of evidence, whether true or false." Lisenba v. California, 314 U.S. 219, 236, 86 L.Ed. 166, 62 S.Ct. 280 (1941).
 We hold that coercive police activity is a necessary predicate to the finding *Page 653 
that a confession is not "voluntary" within the meaning of the Due Process Clause of the Fourteenth Amendment. We also conclude that the taking of respondent's statements, and their admission into evidence, constitute no violation of that Clause.
 . . . .
 We think that the Supreme Court of Colorado erred in importing into this area of constitutional law notions of "free will" that have no place there. There is obviously no reason to require more in the way of a "voluntariness" inquiry in the Miranda waiver context than in the Fourteenth Amendment confession context. The sole concern of the Fifth Amendment, on which Miranda was based, is governmental coercion (citations omitted). Indeed, the Fifth Amendment privilege is not concerned "with moral and psychological pressures to confess emanating from sources other than official coercion." Oregon v. Elstad, 470 U.S. 298, 305, 84 L.Ed.2d 222, 105 S.Ct. [1285] 1290 (1985). The voluntariness of a waiver of this privilege has always depended on the absence of police overreaching, not on "free choice" in any broader sense of the word. (Emphasis added)
 Colorado v. Connelly, 479 U.S. at 166-70, 107 S.Ct. at 521-23, 93 L.Ed.2d at 484-86.
 Thus, under Colorado v. Connelly, there is no Constitutional requirement in making a determination whether a confession is free and voluntary to examine the mental capacity of the defendant; the focus is directed entirely to conduct on the part of the state. Also, Dunkins v. Thigpen, 854 F.2d 394, 399 (11th Cir. 1988), cert. denied 489 U.S. 1059, 109 S.Ct. 1329, 103 L.Ed.2d 597 (1989); Winfrey v. Wyrick, 836 F.2d at 411; Penry v. Lynaugh, 832 F.2d 915, 918 (5th Cir. 1987), reversed in part on other grounds, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989).
 Even though there is no Constitutional requirement to do so, as stated earlier, it nevertheless remain true as a matter of evidence that before any confession is admissible, it must be given by a person with enough intelligence to be a competent witness. (Citations omitted)
Butler v. State, 608 So.2d 314, 322-23 (Miss. 1992).
Coverson obviously had the intelligence to understand the statements he made to law enforcement officers.
DAN M. LEE, P.J., and SMITH, J., join this opinion.
[1] Or, as Coverson claims he was, somewhat intoxicated?
[2] Amendment V, U.S. Constitution states in pertinent part:
"No person . . . shall be compelled in any Criminal Case to be a witness against himself. . . ." U.S. Const. amend. V.
Amendment VI, U.S. Constitution states in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence [sic]." U.S. Const. amend. VI.
Art. 3, § 26 of the Mississippi Constitution states in pertinent part: "In all criminal prosecutions the accused shall have a right to be heard by himself or counsel, or both . . . and he shall not be compelled to give evidence against himself. . . ." Miss. Const. art. 3, § 26.